### HUBER MFG. CO. v. H. CRAWFORD & SONS.

(District Court, M. D. Pennsylvania.   December 28, 1909.)

No. 88, February Term, 1907.

**1. Sales (§ 280\*)—Contract—Warranty—Construction.**

Where a traction engine was furnished on a warranty that it would haul a specified load over certain roads, which were shown to the plaintiff's agent, "or over like roads, when roads are in condition to give engine drivers a good foothold," with the further qualification that "said roads" must be wide enough for the engine to pass over without crowding it into drains or upon banks, the qualification of the warranty applied to all roads over which the engine was to go whether seen by the agent or not.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 280.\*]

**2. Sales (§ 277\*)—Contract—Warranty—Construction.**

The intention of the parties to a warranty in a contract of sale, as gathered from the instrument, is not to be departed from in favor of either party if capable of ascertainment.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 277.\*]

**3. Sales (§ 168½\*)—Traction Engine—Test—Continuance.**

Where a contract for the sale of a traction engine provided for a 10-day trial to decide whether it conformed to the warranty, and, after the first demonstration, defendants refused to take part in any further test, and declared that they would have nothing more to do with the engine and would not take it under any circumstances, plaintiffs were entitled to treat the contract as broken without further trial and omit any further test or demonstration.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 168½.\*]

Action by the Huber Manufacturing Company against H. Crawford & Sons. On rule to show cause why new trial should not be granted. Denied.

J. W. Stone and John G. Reading, for the rule.
Rodney A. Mercur, opposed.

ARCHBALD, District Judge.   The bargain may not have been a good one from the standpoint of the defendants, and the plaintiffs' agent who effected the sale was, no doubt, much more familiar with the subject and had the advantage of going over a part of the road on which the engine was to do its hauling, but that there was any imposition practiced, or any such overreaching as tainted the agreement with fraud, is idle to argue. The parties dealt at arm's length. The defendants wanted an engine powerful enough to haul a certain

load, which the plaintiffs guaranteed that the one specified would do. This engine they furnished, and the jury have found that it fulfilled the guaranty, subject to the qualifications expressed in the agreement that the road should be in proper condition as to surface and width, which was held by the court to apply to all the roads over which the engine was to go, those which the plaintiffs' agent had seen, as well as those which he had not seen, and the controlling question is as to the correctness of this ruling.

The plaintiffs' offer, which the defendants accepted, forming the contract, was to furnish:

· "One twenty-five horse power special contractor's engine, as per specifications attached, complete with jacketed boiler, extra water tank on rear platform, fuel box to hold five hundred pounds of coal, for the sum of two thousand dollars cash, when the engine fulfils its guaranty, which is as follows:

"Said engine is to haul in, over the road from the iron bridge to Canton, Pa., as shown the writer [Mr. Rose, the plaintiffs' agent], or over like roads, when roads are in condition to give engine drivers a good foothold without slipping, fifteen tons on three or four wagons. * * * Said roads must be wide enough for said engine to pass over without crowding it into drains or upon banks. Huber Manufacturing Company further agrees to furnish operator for ten days' actual work, to run said engine, when, if said engine has fulfilled its guaranty, the amount named in this agreement shall be paid. This engine to be delivered on or before the twentieth day of April, 1906, and tested within thirty days. In case the engine fails to do the work, as set forth in this agreement, the said H. Crawford & Sons agrees to return same to railroad station, and the Huber Manufacturing Company agrees to refund all freight charges."

The engine was delivered, although not within the time specified, and was accepted after some demur, although not upon that ground; the objection made to it being that it was too wide and too heavy for the work required of it. Having been persuaded otherwise, for the time being, the defendants unloaded it, and the plaintiffs furnished a man to run it; and the demonstration provided for in the agreement was entered upon. It was designed to haul in logs from the place where the defendants were lumbering to Canton, Pa., where they had their mill; and it was accordingly taken out a certain distance, and, a load having been made up for it, it was started on its inward journey. It must be confessed that some of the results which followed were not altogether assuring. The engine was strong enough, but it was not adapted to the roads, and satisfactory progress was not made over them. Certain things about the engine also gave out, and had to be fixed, and at a sandy place in the road both engine and wagons got stalled, and had to be left out overnight. It was only after repeated trials on successive days that they finally reached their destination. And when the engine was driven through the alley leading to the defendants' mill and lumber yard at Canton, it was so wide that it extended over on the stone sidewalk and crushed it, although the plaintiffs well knew that this was the only practical way to get in there, and represented that it would do so. In consequence of the showing so made, the defendants refused to participate in any further test of it, which was therefore abandoned. The jury were instructed, on this part of the case, that as the defendants absolutely refused to take part, beyond what they had, in the practical demonstration pro-

vided for in the agreement, the plaintiffs were excused from going on with it; and that, if, from the test so far made or otherwise, they (the jury) were satisfied that the engine was equal to the work which it was guaranteed to do, the plaintiffs were entitled to recover. This and the construction put on the guaranty are the things that are now complained of.

I see no occasion to recall any ruling made at the trial. The express guaranty contained in the agreement excludes the implication of anything outside of that as to the fitness of the engine for the work for which it was designed, including its ability to go through the alley without getting over on the stone pavement. And the guaranty, which was given, being in terms predicated upon the roads being in a condition to give the engine drivers a good foothold, and being wide enough for the engine to pass without crowding it into the drains on the one side or the bank on the other, its ability to fulfil the guaranty was to be judged with these conditions existing. The contention of the defendants is that the provision with regard to the width of the roads was intended to apply to those which Mr. Rose, the plaintiffs' agent, did not see; there being a point where they divide, and Mr. Rose being taken over only one part of them. But there is no such limitation in the provision as it reads. And there was equal reason for protection as to both. Indeed, the part over which he was driven was so narrow at points that it may well itself have suggested the precaution. But whatever prompted it, the guaranty is plain. The engine was to haul 15 tons weight, loaded on wagons, "over the road from the iron bridge to Canton, Pa., as shown the writer [Mr. Rose], or over like roads [referring, of course, to those which he did not see] when roads are in condition to give engine drivers a good foothold without slipping [which manifestly applies to both, there being no reason to require this of one any more than the other]. * * * Said roads [also evidently meaning the same roads just spoken of, and referring to all, as to which it was equally essential] must be wide enough for such engine to pass," etc.

It is said that as the agreement emanated from the plaintiffs, having been drawn up by Mr. Rose, a construction favorable to the defendants, in case of doubt, is therefore to be put upon it. Also, that, as between two possible constructions, that one is to be adopted which is equitable, which in this instance is on the side of the defendants; the engine being useless for the purpose for which it was purchased. Christian v. First National Bank, 155 Fed. 705, 84 C. C. A. 53. But notwithstanding the view to which the court was at first inclined at the trial, the agreement cannot be regarded as doubtful. Nor are we to be turned aside, by a conception of what may be equitable, from the natural interpretation of the agreement. The intention of the parties, as it is gathered from the instrument, is to be the guide, which is not to be departed from in favor of either party if capable of ascertainment. The roads, which, according to the terms of the guaranty, are to be in a condition to give the engine drivers a good foothold, and wide enough so as not to crowd the engine over into the ditches on the one side or onto the bank on the other, are necessarily the roads over

which the engine is to do its work, it matters not where. And it was just as essential that they should be wide enough to make this possible, as that they should not be slippery. The plaintiffs protected themselves against the latter, which, of course, they did not intend to limit to that part of the road which Mr. Rose saw. But by the same consideration, both conditions being on a par so far as concerns the work of the engine, it is not to be assumed that there was any intended limitation with regard to the width any more than the slipping. It is the "said roads" that must be wide enough for the engine to pass, which by this reference, as well as by the necessities of the case, includes all of them.

·Neither can there be any just complaint as to the instructions with regard to the refusal of the defendants to participate in a continuance of the test. The demonstration provided for in the agreement, as to the ability of the engine to fulfil the guaranty, was, of course, necessary before anything was due on the contract. But the defendants' attitude was such that it was useless to proceed. A ten days' trial was to decide, and neither party could stop short of this, if it was demanded by the other. The engine might fail, as it apparently did at the start, and yet make good in the end, after the mode of handling it, in the place where it was to work, was understood better. But the trial was not to be one sided. And particularly was not for the purpose of satisfying the plaintiffs, who, no doubt, had full faith in the engine, but to demonstrate to both parties, in a way that could not be questioned, whether it would or would not do what was required of it. The plaintiffs were not called upon therefore to go through the idle form of driving the engine over the road, after the defendants had declared that they would have nothing more to do with it. This declaration, moreover, was an ultimatum. It was not simply that they would not take part in a further test, but that they absolutely would not take the machine, in view of which there was nothing left for the plaintiffs to do but to throw upon the defendants the responsibility for abandoning the test, relying on their ability, upon suit brought, to convince the jury, as they have, that the engine was capable of doing what had been guaranteed, when the conditions were present for which they had stipulated.

The rule for a new trial is therefore discharged, and judgment directed to be entered on the verdict.